UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LEE RICHARD SNYDER,

             Petitioner,

vs.                             Case No. 3:12-cv-785-J-39PDB

SECRETARY, DOC, et al.,

             Respondents.

_____

**ORDER**

**A. Status**

Petitioner Lee Richard Snyder, an inmate of the Florida penal system who is proceeding pro se, filed an unsigned and undated Petition for Writ of Habeas Corpus (Original Petition) (Doc. 1) under 28 U.S.C. § 2254 on July 11, 2012.[1]  He is proceeding on a signed Petition (Petition) (Doc. 7), filed on July 20, 2012, pursuant to the mailbox rule.  He is challenging a 2007 state court (Columbia County, Florida) judgment of conviction for battery and first degree arson.  Petition at 1.  The court sentenced Petitioner

---

[1] Petitioner filed the Original Petition (Doc. 1) with the Clerk on July 11, 2012.  Ordinarily, the Court would give a pro se Petitioner the benefit of the mailbox rule; however, in this instance, Petitioner neither signed nor dated the Original Petition.  Additionally, the Original Petition does not contain an institutional stamp showing the date that it was turned over to the prison authorities for mailing to this Court.  See Houston v. Lack, 487 U.S. 266, 275-76 (1988); Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts.  Since Petitioner has not complied with Rule 3(d), this Court will use the file date of July 11, 2012, when calculating the one-year limitations period under 28 U.S.C. § 2244(d).

to a term of time-served (364 days) on the battery count, and twenty years in prison followed by ten years of probation for the arson count.

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations on petitions for writ of habeas corpus. Specifically, 28 U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other

- 2 -

> collateral review with respect to the
> pertinent judgment or claim is pending shall
> not be counted toward any period of limitation
> under this subsection.

28 U.S.C. § 2244(d).

Respondents contend that Petitioner has not complied with the one-year period of limitations set forth in 28 U.S.C. § 2244(d).[2] See Respondents' Motion to Dismiss and/Order [sic] Answer in Response to Order to Show Cause (Response) (Doc. 21).[3]  In support of their contentions, they have submitted exhibits.[4]  See Appendix (Docs. 21 & 22).  The Court admonished Petitioner and gave him a time frame to respond to the Response.  See Order (Doc. 9). Petitioner filed his Reply to Respondents' Response to Petitioner's Original Petition for Writ of Habeas Corpus (Reply) (Doc. 32).

### B. One-Year Limitations Period

The following procedural history is relevant to the one-year limitations issue.  After the conclusion of a jury trial, the jury

---

[2] The Court will give Petitioner the benefit of the mailbox rule with respect to his pro se inmate state court filings when calculating the one-year limitations period under 28 U.S.C. § 2244(d).  See Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts.

[3] Having been sentenced to time-served on the first count, battery, Petitioner is not "in custody" on that count and it is not subject to collateral attack in this federal habeas proceeding. See http://www.dc.state.fl.us/ActiveInmates/detail.

[4] The Court will hereinafter refer to Respondents' exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Exhibit.  Otherwise, the Court will reference the page number on the particular document.

returned a verdict of guilty of battery (count one of the amended information, the charge of attempted murder, first degree premeditated) and arson in the first degree (count two of the amended information, the charge of arson in the first degree).  Ex. B at 349-50.  The court sentenced Petitioner to time-served (364) days on count one (battery), and to twenty years in prison followed by ten years of probation on count two (arson).  Ex. A at 165-68.  The court entered judgment and sentence on May 31, 2007.  <u>Id</u>. at 163-68.  Petitioner appealed.  <u>Id</u>. at 172; Ex. D; Ex E; Ex. F.

The First District Court of Appeal, in its opinion of May 29, 2008, affirmed per curiam.  Ex. G.  The mandate issued on June 16, 2008.  <u>Id</u>.

Petitioner's conviction became final on direct appeal on August 27, 2008, when the ninety-day period to seek review in the United States Supreme Court expired.  Sup. Ct. R. 13.3.  The one-year period of limitations started running on August 28, 2008, the day after Petitioner's conviction became final.  It ran for 496 days.  On January 5, 2010, after the expiration of the AEDPA one-year limitations period, Petitioner, through counsel, filed a Rule 3.850 motion.  Ex. H, Motion for Postconviction [sic] Relief.  Thus, Petitioner did not have any applications for post conviction relief pending in the state court system after the conviction became final on direct review through the expiration of the one-year AEDPA limitations period.

The motions filed after the expiration of the limitations period did not toll the federal one-year limitations period because it had already expired.  See Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.) (per curiam), cert. denied, 531 U.S. 991 (2000) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period.  A state-court petition like [Petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

Based on the foregoing, the Original Petition, filed July 11, 2012, and the Petition, filed July 20, 2012, are untimely filed and are due to be dismissed unless Petitioner can establish that equitable tolling of the statute of limitations is warranted. Petitioner asserts that he is entitled to equitable tolling because "his state of incompetence exceeded adjudication and sentencing, and proceeded into his incarceration in [the] Department of Corrections."  Petition at 12.  He states that his mental illnesses, Schizophrenia and Bipolar I Disorder, constituted extraordinary circumstances which prevented him from filing a timely federal petition.  Memorandum of Law in Support of 28 U.S.C. § 2254 Petition (Doc. 2 at 5).  Petitioner claims there is a causal link between his mental "incompetence" and his failure to adhere to the statute of limitations.  Id. at 6.

In deciding whether the statute of limitations bars this action, the Court should consider whether Petitioner has claimed and demonstrated that a state impediment prevented him from timely filing or that equitable tolling "excepts the one-year filing deadline." Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005), aff'd, 549 U.S. 327 (2007). Here, Petitioner claims that he is entitled to equitable tolling due to a mental infirmity. The question before the Court is whether Petitioner has demonstrated that he was mentally incapable of filing a federal habeas corpus petition in a timely manner during the pertinent time period. Upon review, the pertinent time period is that period from August 28, 2008, the day after his conviction became final, through August 27, 2009, when the one-year period expired.

The United States Supreme Court has established a two-prong test for equitable tolling, stating that a petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007); see Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (stating that equitable tolling "is a remedy that must be used sparingly"); see also Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (per curiam) (noting that the Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence.") (citation

- 6 -

omitted).   The burden is on Petitioner to make a showing of extraordinary circumstances that are both beyond his control and unavoidable with diligence, and this high hurdle will not be easily surmounted.   Howell v. Crosby, 415 F.3d 1250 (11th Cir. 2005), cert. denied, 546 U.S. 1108 (2006); Wade v. Battle, 379 F.3d 1254, 1265 (11th Cir. 2004) (per curiam) (citations omitted).   Upon careful consideration, Petitioner has not met the burden of showing that equitable tolling is warranted.

An allegation of mental incompetency, without a showing of a causal connection between the incompetence and the failure to file a timely application, does not justify equitable tolling.   Lawrence v. Florida, 421 F.3d at 1226-27.   See Fox v. McNeil, 373 F. App'x. 32, 34 (11th Cir. 2010) (per curiam) (finding petitioner had not met his burden to prove that equitable tolling was appropriate where he had "failed to establish a causal link between his claims of mental incompetence and the untimely filing of his federal habeas corpus petition"), cert. denied, 131 S.Ct. 1047 (2011); United States v. Sosa, 364 F.3d 507, 513 (4th Cir. 2004) (finding the pro se defendant's alleged mental disorders did not justify equitable tolling of the one-year limitations period, absent a showing that his condition resulted in "profound mental incapacity").

Some historical background will be provided to give context to Petitioner's claim of mental infirmity.   At a pre-trial status

- 7 -

conference, on May 15, 2007, defense counsel noted that an amended information had been filed by the state the previous day, charging attempted premeditated murder, replacing one of the two arson charges.  Ex. H at 202.  The state announced it was ready for trial.  Id. at 203.  Defense counsel noted that Petitioner, in response, shook his head indicating he was not ready for trial. Id.  Defense counsel informed the court that he was ready to try the case.  Id.  He said that he had spent about four hours with Petitioner the previous day, going over all of the deposition transcripts.  Id.  Counsel noted that they reviewed colored pictures, although they had previously been provided other, less clear, copies of the same pictures.  Id. at 204.  They reviewed the taped interview of the victim, one they had previously reviewed. Id.  Shortly after the pretrial conference, they reviewed the 911 tape and the photographs prepared by Brian Rix.  Id.  Counsel stated: "There are no remaining witnesses that I'm aware of that remain to be deposed and I believe we are ready for trial."  Id.

After being sworn in, Petitioner responded to the court's inquiry.  Id.  The court asked Petitioner if his counsel had gone over the discovery materials received from the state, and Petitioner responded that the review was not to his satisfaction because he has dyslexia and he did not feel that he was ready for a murder trial after four hours of review.  Id. at 205.  The court asked if counsel had gone over the discovery on one or more

- 8 -

occasions, including showing Petitioner papers, reading some things, and reviewing photographs.  Id. at 206.  Petitioner responded affirmatively.  Id.  Petitioner stated he wanted counsel to do it more.  Id.  Petitioner stated that counsel had done it once before, for an hour and a half.  Id.  Petitioner responded affirmatively that an investigator from the Public Defender's Office had spoken with him the previous week.  Id. at 206-207.

Petitioner told the court that, upon his arrest, he was placed in solitary confinement for attempted self-harm/mental health reasons.  Id.  He explained that he refused to take medication that the doctor provided because "that was going to make me feel bad." Id.  He further stated that "I've still been trying to get medication from the doctor now and I haven't got any."  Id. Petitioner told the court that the period of solitary confinement occurred twenty-two months before the status conference.  Id.

The court asked if an investigator or an attorney from the Public Defender's Office came to speak with him over a year ago. Id. at 207-208.  Petitioner responded affirmatively.  Id. at 208. He said he spoke with the person a couple of times.  Id. Petitioner told the court he was on medication for fourteen months, then he refused to take medication that made him feel worse, and he had not seen Doctor Mhatre.  Id. at 209.

The court asked Petitioner if he was currently on medication, and Petitioner said no.  Id.  Petitioner said the nurse told him

that based on his refusal to take prescribed medications, the doctor was not going to see him anymore. Id. Petitioner said, "I even told Baker [defense counsel] about it a couple of times." Id.

Petitioner explained: "it's hard for me because I have a bunch of thoughts going through my mind at once. That's why I need medication." Id. He told the court that Dr. Mhatre examined him and prescribed medication. Id. at 210. Petitioner said the medication made him feel worse, explaining that it felt like his "mind wandered worse." Id. The court asked if Petitioner had any physical problems caused by the medication other than his mind wandering worse, and Petitioner responded no. Id.

Petitioner said he took different medications for a period of fourteen months. Id. at 211. When Petitioner complained about a medication, the doctor prescribed a different medication. Id. Petitioner attested that Doctor Mhatre changed the medication three times after Petitioner complained about the medication. Id. Petitioner stated the medications seemed to make him worse. Id. Petitioner mentioned that because he refused to take medication anymore, the doctor refused to see him. Id. at 212. Petitioner stated that he signed a document refusing to take medication. Id. The court asked Petitioner if he had seen a nurse, a doctor, or anyone else since he signed the paper refusing to take medication. Id. Petitioner said no. Id. at 213.

Petitioner told the court he was treated for being Bipolar. Id. When asked how it affected him, Petitioner said he gets social security disability, cannot hold a job, and cannot concentrate. Id. The court asked if the lack of concentration was the "biggest thing" that affected Petitioner. Id. Petitioner said yes. Id. at 214. Petitioner explained that if he were not Bipolar, he could understand things better. Id.

The court then asked questions about Petitioner's memory. Petitioner remembered seeing his counsel the day before. Id. Petitioner stated that they discussed part of the cases, that counsel wrote down some of Petitioner's questions in order to return with more records, and counsel showed Petitioner about twenty pictures of the burned-down house. Id. at 214-15.

The court asked Petitioner what he wanted his counsel to do that his counsel had not already done. Id. at 215. Petitioner responded that he did not understand the new charge, even though his counsel showed him the paper. Id. The court responded that, in an abundance of caution, the court would read the amended information to Petitioner. Id. The court read the amended information aloud to Petitioner. Id. at 216-17.

After counsel advised the court that Petitioner pled not guilty to the new count, amended count one, the court asked Petitioner if there was anything else that he wanted counsel to do on his behalf that had not been done. Id. at 217. Counsel advised

the court that he had provided Petitioner with written transcripts of the depositions long ago.  Id.  Some transcripts of firemen were not done due to the quality of the recordings, but counsel advised Petitioner that they were not terribly helpful one way or another as the firemen simply said they responded to the fire.  Id. at 218. The prosecutor advised counsel and the court that she did not intend to call any of the firefighters other than three named individuals.  Id. at 219.  Defense counsel told the court that they had deposed twelve firefighters, and he personally attended the depositions.  Id.

The court asked Petitioner what he wanted counsel to do to get ready for trial.  Id. at 220.  Petitioner responded:

> I don't feel ready.  I just don't feel
> ready, especially now that the fires are out
> there.  I don't think we're going to be able
> to pick a jury that's going to be -- you know
> the word you call it, that going to be -- you
> know, knowing that there's a fire out there, I
> don't think I'm going to have the selection of
> a fair jury.

Id. at 220-21.

The court explained that if Petitioner could not get a fair jury, the court could continue the case or venue could be changed upon motion.  Id. at 221.  Then the court said, "I think that fear, the fact that there are fires going on around here that have nothing to do with arson or your case or attempted murder, which is the charge here, I don't believe we'll have a problem getting a

jury, but we certainly have ways to ask plenty of questions to find out if they can be fair and impartial." Id. at 221-22.

The court commented that it could not see anything counsel failed to do to prepare for trial. Id. at 222. The court mentioned that Petitioner was worried about fires in the area, but the court recognized that the fires were believed to be started by lightning, and there was no connection to Petitioner's case. Id. The court determined that the fires had nothing to do with the preparation of Petitioner's case and did not justify a delay in trying Petitioner's case. Id. The court asked Petitioner if there was anything else he wanted to say, and he responded no. Id.

Defense counsel mentioned a plea offer of ten years in the Department of Corrections followed by fifteen years of probation. Id. at 223. On multiple occasions, counsel attempted to discuss with Petitioner resolving the case short of trial. Id. Counsel said that Petitioner advised him that he was unwilling to accept anything that would subject him to incarceration in the Department of Corrections. Id. Petitioner rejected the plea offer. Id. at 224. The prosecutor informed the court that it rejected any less prison time for Petitioner. Id.

The court asked Petitioner if there was anything else he wanted to go over. Id. Petitioner said no. Id. The court advised Petitioner of the maximum possible penalties, and

Petitioner responded that he understood.  _Id_. at 225.  Petitioner

again rejected the plea offer.  _Id_. at 225-26.

The court ended its inquiry.  _Id_. at 226.  The court then made

its finding:

> While all of you are here, I want to make a
> specific finding on the record that each
> question I asked Mr. Snyder, he gave a
> responsive answer.  It's very clear to me that
> he understands exactly what is going on in
> this proceeding and he is certainly competent
> to go forward.

_Id_.

The Arrest Affidavit, dated July 11, 2005, states that after

Petitioner's overdose of medication at the scene of the crime on

July 6, 2005, Petitioner was taken to the hospital, released and

transported to Meridian Behavioral Facility in Lake City, where he

was "deemed to be competent to be released this date."  Ex. A,

Arrest Affidavit at 2.  The record does not show that defense

counsel requested that the trial court issue an order directing

mental health experts be appointed to examine Petitioner regarding

his competency to proceed to trial.

The Court will also look to the trial record to give context

for Petitioner's claim of mental impairment.  At trial, Petitioner

was actively engaged in his defense and frequently consulted with

his counsel.  From the inception of the trial, it is quite apparent

that Petitioner was aware of what was happening, he had a rational

understanding of the proceedings, and he had the concentration and

attention span to follow the events of the trial.  For example, at the beginning of the trial, defense counsel advised the court there was a matter that his client wanted to put on the record, and it concerned deposition tapes that were inaudible and Plaintiff's concern that there may be helpful information contained in the depositions of the firefighters.  Ex. B at 6.  During the trial, with his client present, defense counsel asked firefighter Robert Garbett about the content of his upcoming testimony.  Id. at 127-28.  The court noted that the conversation took place at defense table with Petitioner present.  Id. at 128.

Later on during the trial, after defense counsel moved for a mistrial, the defense considered the alternative remedy of the court giving a curative instruction.  Id. at 155.  Petitioner assured the court that he had already been put under oath.  Id. Petitioner told his counsel that after hearing the proposed curative instruction, he would rather have the court give a curative instruction.  Id.  Also, Petitioner requested that each juror's handwritten notes about the matter be removed from consideration.  Id. at 155-56.  Petitioner expressed on the record his preference for a curative instruction.  Id. at 156.  Also of significance, Petitioner, before the jury even requested a copy of the jury instructions, told his attorney that he wanted the jury to have a copy of the instructions during deliberation.  Id. at 342.

With regard to the question of seeking a Pre-sentence Investigation (PSI), defense counsel asked for a moment to discuss the matter. Id. at 355. After a brief discussion with Petitioner, defense counsel announced that they were not going to request a PSI, and that they were requesting a sentencing date of May 31st. Id.

At sentencing, Petitioner agreed that $1,500 was a reasonable fee. Ex. C at 377. More significantly, he inquired about his appeal rights. Id. at 379. He asked the court that if it had ordered his counsel to be his attorney of record. Id. Petitioner also asked if his counsel would be liable for any failure to file a timely appeal notice. Id. at 380. Finally, he inquired as to whether he would be given an opportunity to seek a mistrial if his attorney did not file his appeal. Id. The court explained that there is a process for a belated appeal. Id. Petitioner responded that he "just wanted to know." Id.

There is nothing in the record showing that Petitioner exhibited any unusual, inappropriate or disruptive behavior during the trial. Also, there is nothing in the record showing that the court, counsel, or Petitioner were concerned that Petitioner was unable to give appropriate attention to the proceedings. Indeed, Petitioner actively communicated with his counsel, and throughout the trial, Petitioner made very astute observations and appropriate requests of his counsel.

With this background, the Court looks to the relevant time period at issue:  the period from March 28, 2008, the day after his conviction became final, through August 27, 2009, when the one-year period expired.   There is no evidence of a mental condition or infirmity other than those stated in the trial court record and those presented in the records attached to the Petition. Petitioner has failed to show that his mental condition during the one-year limitations period caused the untimely filing. Petitioner's conclusory allegation that being dyslexic, depressed and Bipolar caused his untimeliness in filing a federal petition,[5] is certainly insufficient to satisfy the requirement that Petitioner present evidence to create a factual issue as to a causal connection between any mental impairment and his ability to file a timely petition.

Indeed, after an extensive review of the record, this Court opines that the record refutes Petitioner's assertion of mental incapacity during the relevant AEDPA one-year time period.   The record establishes that any mental impairment was not sufficient to render him mentally incapacitated and would not have affected his ability to timely file the petition in this Court.   Indeed, Petitioner has failed to show profound mental incapacity during the

---

[5] Although Petitioner states that he has been diagnosed with schizophrenia, the consistent diagnosis throughout his medical records is that Petitioner is depressed, Bipolar, and suffers from an antisocial personality disorder.

- 17 -

relevant time period, and the record demonstrates that Petitioner was mentally capable of filing a timely petition in this Court.

In particular, the Court looks to the evidence Petitioner submitted in support of his Amended Rule 3.580 motion.  Ex. H, Amended Motion for Postconviction Relief at 106-110.  Although the records show depression and low mood, they also show that Petitioner has an eleventh grade education.  Id. at 109.  The records also reflect that in 2002, Petitioner had normal thought process; he was oriented as to self, time, person and place; he had appropriate speech and language; he had normal recent and remote memory, and normal information/intelligence and fair insight and judgment.  Id. at 110.  His eye contact was good, he was cooperative but hostile, he was alert and hyperverbal, but also depressed and irritable.  Id.  His affect was inappropriate and labile, and his concentration was considered impaired.  Id.  The objective findings were depressed with mood swings.  Id.  Also, he was diagnosed as Bipolar Type I.  Id.  Of import, none of these records are from the relevant time period.

The Columbia County Jail records are also not from the relevant time period.  Id. at 138-99.  A brief summary of these records is noted herein.  On July 12, 2005, Petitioner arrived at the jail from the Meridian Behavioral Healthcare and was placed on suicide watch until Dr. Mhatre could review his status.  Id. at 199.  On July 15, 2005, Petitioner was found to be alert and

oriented, with a history of depression.  Id. at 144.  On July 25, 2005, Petitioner consented to treatment, mood stabilizers, for the relief of being Bipolar.  Id. at 197.  He signed an Informed Consent for Medication Administration.  Id. at 198.  On August 8, 2005, Petitioner threatened to hurt himself or others and was placed on suicide watch.  Id. at 187.  Plaintiff also complained of lack of sleep and his mind racing.  Id. at 188.  On September 26, 2005, Petitioner refused all medication.  Id. at 193.  On November 6, 2005, Petitioner consented to treatment.  Id. at 145.

In 2006, Plaintiff complained he was depressed and suicidal because the trial kept getting postponed.  Id. at 191.  On January 16, 2006, he refused his medication.  Id. at 192.  In March, he denied being suicidal.  Id.  On July 19, 2006, July 20, 2006, and July 21, 2006, Petitioner signed Refusals of Health Care Services, refusing to take any medication.  Id. at 154-56.  On July 24, 2006, a staff member consulted with Dr. Mhatre and informed him that Petitioner refused all medications.  Id. at 189.  Based on Petitioner's refusal to take any medication, Dr. Mhatre determined that there was no further need for Petitioner to see him.  Id.

Petitioner provided additional medical records in support of his Petition.  These show that on November 29, 2007, he was suicidal, depressed, with no hallucinations.  Petition, Exhibit A at 16.  It noted:  "Axix I: Bipolar Disorder NOS by history and Polysubstance Dependence[;] Axis II: R/O Antisocial Personality."

*Id.* at 16.  Petitioner's memory was good for immediate and fair for recent information.  *Id.*  On November 9, 2007, Petitioner's strengths are recorded as "[i]ntelligence, some support."  *Id.* at 23.

A similar diagnosis is reflected for December 12, 2007, noting the current focus of treatment is on Petitioner's mood swings.  *Id.* at 17.  The record also shows that Petitioner worked in property management and plumbing.  *Id.* at 18.  It also reported disability income.  *Id.*  There is mention of possible brain damage from hanging/choking attempt.  *Id.*  It mentioned that "diagnosis have ranged from adjustment disorder to bipolar to primarily antisocial."  *Id.*

On January 9, 2008, a report noted that Petitioner was "angry, oppositional [sic], and inconsistent."  *Id.* at 32.  On January 16, 2008, a report stated that Petitioner was not meeting goal for mood swings.  *Id.* at 33.  On February 12, 2008, a report showed that Petitioner "continues in the same oppositional [sic]/nihilistic fashion[,]" with more medication changes, but Petitioner not meeting goal for mood swings.  *Id.* at 26.  On May 30, 2008, a report referred to Petitioner's poor prison adjustment, with poor compliance with treatment, suggesting a "help-seeking/rejecting pattern."  *Id.* at 34.  Also, of significance, there is a medical record of a negative noncontrast head [brain] CT scan from July 7, 2005, showing: "[n]ormal gray white matter differentiation.  Normal

ventricles.  No evidence of edema or sulcal effacement to suggest
edema."  Id. at 50.

Of import, shortly before the relevant time period (August 28,
2008 through August 27, 2009), the following transpired.  On July
16, 2008, a very complete report recognized Petitioner's progress,
pointing out that he was adapting and adjusting to his surroundings
and circumstances.  A Psychiatrist, a Psychological Specialist, and
a Senior Psychologist reported the following:

> He remained largely unchanged until he had
> medication changes and participated in a group
> focused on self harm.  He benefitted more from
> group apparently than anything else despite
> his initial attitude that there was no support
> to be had from inmates.  He also established
> regular contacts with his sister, which helped
> him.  He recovered a range of affect and began
> to make effort to actually manage anger rather
> than be ruled by it.  He requested discharge
> and wants to have the greater structure and
> freedom of a compound.  He appears to have
> adapted to the reality of his sentence in a
> way that would allow him to function on
> compound.

Id. at 21.

With regard to Petitioner's current mental status, it
provided:

> Pt was dressed in T shirt and blue pants with
> good grooming.  He made fair to poor eye
> contact and had superficially cooperative
> attitude.  His mood was slightly irritated and
> depressed and affect restricted.
> Hallucinations were not reported or apparent.
> Thinking was clear.  Speech was brief and non-
> delusional.  Suicidality and homicidality were
> denied.  Food intake was reported to be good;
> and sleep, poor partly from a pacing roommate.

> Memory was adequate for all ranges.  He was
> oriented X4 except date.

Id.

The Discharge Diagnosis reiterated that Petitioner has Bipolar Disorder NOS with Depressed Mood by history; Polysubstance Dependence; and Antisocial Personality.  Id.  Along with medications, the recommended aftercare included outpatient follow-up to monitor Petitioner's mood swings.  Id.  Thus, just before the relevant time period, Petitioner apparently showed marked improvement and the medical specialists recommended Petitioner's placement on the compound and outpatient follow-up care.

With that background information in mind, the Court will address the relevant time period at issue, the period from August 28, 2008, the day after his conviction became final, through August 27, 2009.  There is no evidence in the record to support Petitioner's claim that his mental condition or infirmity during the one-year limitations period impaired his ability throughout the entire one-year period, preventing him from making a timely application.[6]

Simply claiming one has been diagnosed as depressed and Bipolar does not establish entitlement to equitable tolling. Indeed, this Court has addressed the applicability of equitable

---

[6] Perhaps Petitioner had days of instability or deep depression during the one-year period, but he has utterly failed to show that he was incapable of filing a timely petition during the relevant limitations period.

tolling when a petitioner is claiming he suffers from mental health

issues:

> "Illness-mental or physical-tolls a
> statute of limitations only if it actually
> prevents the sufferer from pursuing his legal
> rights during the limitations period." Price
> v. Lewis, 119 F. App'x 725, 726 (6th Cir.
> 2005); see also Lawrence v. Florida, 421 F.3d
> 1221, 1226-27 (11th Cir. 2005) (concluding
> equitable tolling was not warranted because
> the petitioner failed to "establish a causal
> connection between his alleged mental
> incapacity and his ability to file a timely
> petition"); Lewis v. Howerton, No.
> 1:07-cv-2803-JEC-WEJ, 2012 WL 4514044, at
> *17-19 (N.D. Ga. Sept.30, 2012) (holding that
> the petitioner's mental impairment which
> included bipolar disorder was not an
> extraordinary circumstance that prevented the
> timely filing of the habeas petition); Cutts
> v. Jones, Case No. 1:06-cv-256-MHT, 2009 WL
> 230091, *7 (M.D. Ala. Jan. 30, 2009)
> (concluding that equitable tolling was not
> warranted based on the petitioner's
> allegations of mental impairment because he
> failed to establish a causal connection
> between the alleged mental impairment and his
> ability to file a timely federal habeas
> petition).

Bridgeman v. Sec'y, Dep't of Corr., No. 6:13-cv-753-Orl-37TBS, 2014

WL 3385043,at *3 (M.D. Fla. July 9, 2014). See United States v.

Juarez, No. 3:09cr6/MCR, 3:12CV538/MCR/EMT, 2013 WL 791066, at *4

(N.D. Fla. Jan. 31, 2013) (an assertion that lithium taken for

depression and bipolar disorder caused insomnia and clouded daytime

thinking was deemed not to be the sort of extraordinary

circumstance that warrants application of the equitable tolling

doctrine), report and recommendation adopted by 2013 WL 791025

(N.D. Fla. Mar. 5, 2013); <u>Whiting v. McNeil</u>, No. 4:08cv301-RH/WCS, 2009 WL 2460753, at *5 (N.D. Fla. Aug. 7, 2009) (not reported in F.Supp.2d) (claims of suffering mental impairments for life does not entitle a federal petitioner to equitable tolling).

Indeed, "mental impairment is not *per se* a reason to toll a statute of limitations." <u>Hunter v. Ferrell</u>, 587 F.3d 1304, 1308 (11th Cir. 2009) (per curiam) (citation omitted).  Petitioner must demonstrate that there is a causal connection between his delay and his mental impairment; he is required to show that his mental illness was so profound and debilitating that he was unable to file a timely habeas petition, given his mental limitations.  <u>Lewis v. Howerton</u>, No. 1:07-cv-2803-JEC-WEJ, 2012 WL 4514044, at *16 (N.D. Ga. Sept. 30, 2012) ("the question before the Court is whether the mental illness [petitioner] suffered was so profound and debilitating that he would have been unable to file a timely habeas petition, given these limitations").  Petitioner has not met his burden.

Also of note, being dyslexic does not constitute an impairment sufficient to render a petitioner incapable of making a timely application.  <u>Pogue v. Crosby</u>, No. 8:02CV2174T27EAJ, 2006 WL 213866, at *3 (M.D. Fla. Jan. 27, 2006) (concluding that dyslexia, a learning disorder, does not qualify as an extraordinary circumstance for equitable tolling purposes).  With regard to the question of brain damage, the only brain CT scan submitted to the

Court is a negative report, showing normal brain matter. Therefore, there is no evidence of brain damage so significant that Petitioner was incapable or unable to timely file a federal petition.  Finally, medical staff noted Petitioner's intelligence as being one of his strengths.

Here, Petitioner has not demonstrated diligence within his ability.  With respect to the days of the limitations period that passed between his conviction becoming final and the expiration of the limitations period, Petitioner has failed to demonstrate a causal connection between any mental deficiency and his ability to file a timely federal petition.  Ignorance of the law will not suffice as justification for failure to timely file a federal petition.  See Johnson v. United States, 544 U.S. 295, 311 (2005) (holding that the Court has "never accepted pro se representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."). In sum, Petitioner has failed to show that his mental condition prevented him from diligently pursuing his state court remedies throughout the entire one-year period at issue.

In conclusion, Petitioner has failed to establish that any mental impairment he suffered during the AEDPA limitations period was sufficient to render him mentally incapable of timely filing a petition.  At most, Petitioner has shown that he is dyslexic, Bipolar, suffers from depression and mood swings, and has an

antisocial personality disorder; however, there is not a mental condition or infirmity during the one-year AEDPA period which has been shown to have impaired his ability to make a timely application.   Indeed, shortly before the relevant one-year limitations period, the mental health specialists assigned Petitioner to the compound, prescribed medication, and placed him on outpatient follow-up care, noting his stated readiness for the freedom and structure of daily life on the compound.

This Court finds that Petitioner is not entitled to equitable tolling from August 28, 2008, the day after his conviction became final, through August 27, 2009, when the one-year period expired. The Court is of the opinion that Petitioner has not shown that he is entitled to extraordinary relief.

In conclusion, Petitioner has not shown a justifiable reason why the dictates of the one-year limitations period should not be imposed upon him.   For this reason, this Court will dismiss this case with prejudice pursuant to 28 U.S.C. § 2244(d).

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 7) is **DISMISSED with prejudice** pursuant to 28 U.S.C. § 2244(d).

2.   The Clerk of the Court shall enter judgment dismissing this case with prejudice and shall close this case.

3.    If Petitioner appeals the dismissal of his Petition with prejudice, **the Court denies a certificate of appealability**.[7] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of February, 2015.

_Brian J. Davis_
_____
BRIAN J. DAVIS
United States District Judge

sa 1/27
c:
Lee Richard Snyder
Counsel of Record

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

- 27 -